## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SAMUEL JAY BUCK,** | : | **CIVIL NO. 1:14-CV-1188** |
| | : | |
| **Plaintiff,** | : | **(Judge Rambo)** |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **U.S. PENITENTIARY CANAAN** | : | |
| **KITCHEN SUPERVISOR, et al.,** | : | |
| | : | |
| **Defendant.** | : | |

## REPORT AND RECOMMENDATION

### I.   Statement of Facts and of the Case

Sometimes great controversies arise out of what are seemingly minor disputes. So it is in this case, a federal prisoner civil rights lawsuit which began as a dispute over portions of meat loaf in a prison chow line.

The plaintiff, Samuel Buck, is a federal inmate who was housed in the United States Penitentiary, Canaan in October 2012. According to Buck, one day at meal time he observed a correctional officer distributing two slices of meatloaf to inmates at the prison cafeteria. (Doc. 1.) Yet when it was Buck's turn to receive meatloaf he was only provided a ½ slice by the kitchen server, Mr. Simon. Buck remonstrated, and his conversation with Mr. Simon is alleged to have quickly declined into a profane

exchange in which Buck alleges that Simon told him that he would receive additional meatloaf only if he performed a sexual act. (Id.)

Buck complained about this exchange to the prison supervisor on duty, who looked into the matter and concluded that Buck's complaints were unfounded. While one might expect that this would have been the sad coda to an unfortunate mealtime dispute, for Buck this matter was merely the prelude to what he contends were a series of constitutional infractions. According to Buck's complaint, following this meatloaf dispute he was threatened by anonymous inmates, denied medical treatment, and subjected to false misconduct charges, matters that Buck attributes to retaliation against him for protesting disparate meatloaf distribution at the prison. (Id.) Buck's complaint also resurrects a old dispute which pre-dates this meatloaf controversy, a 2011 complaint about his medical care and the alleged denial of a knee brace. On the basis of these allegations, which describe an escalating array of retaliation stemming from a dispute over portions of meatloaf, Buck seeks $25,000 in damages, along with a transfer to the prison of his choosing, a state facility in Wyoming. (Id.)

The defendants have now moved for summary judgment in this case. (Doc. 22.) In their summary judgment motion, the defendants asserts that Buck has never exhausted his administrative remedies with respect to the grievances outlined in this complaint. The defendants also dispute Buck's claims on their merits, providing

medical records which reveal that Buck received on-going medical care and treatment, as well as disciplinary records, which detail the factual basis for the misconduct citations lodged against Buck and confirm that hose misconduct citations have never been set aside.   (Id.)   Buck has responded to this motion, albeit in a singularly unresponsive fashion simply stating that he has "in my posession [sic] on paper the evidence that suports [sic] the complaints."  (Doc. 23.)  Therefore, this matter is now ripe for resolution.

For the reasons set forth below, it is recommended that this motion for summary judgment be granted.

## II.    Discussion

### A.    Rule 56–The Legal Standard

The defendants have filed a motion to dismiss, or in the alternative for summary judgment.   In this case, however, all parties have treated this motion as a summary judgment motion.   Therefore, we will assess this motion under the standards which govern summary judgment motions.

Rule 56(a) of the Federal Rules of Civil Procedure, provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. Rule 56(a).  Through summary adjudication a court is empowered to dispose

of those claims that do not present a "genuine dispute as to any material fact," Fed. R. Civ. P. 56(a), and for which a trial would be "an empty and unnecessary formality." Univac Dental Co. v. Dentsply Int'l, Inc., No. 07-0493, 2010 U.S. Dist. LEXIS 31615, at *4 (M.D. Pa. Mar. 31, 2010). The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. Id. at 248-49.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the nonmoving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. Celotex, 477 U.S. at 322. Summary judgment is also appropriate if the non-moving

party provides merely colorable, conclusory, or speculative evidence. <u>Anderson</u>, 477 U.S. at 249. There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts. <u>Id.</u> at 252; <u>see also</u>, <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). In making this determination, the court must "consider all evidence in the light most favorable to the party opposing the motion." <u>A.W. v. Jersey City Pub. Schs.</u>, 486 F.3d 791, 794 (3d Cir. 2007).

Moreover, a party who seeks to resist a summary judgment motion by citing to disputed material issues of fact must show by competent evidence that such factual disputes exist. Moreover, a party who seeks to resist a summary judgment motion by citing to disputed material issues of fact must show by competent evidence that such factual disputes exist. Further, "only evidence which is admissible at trial may be considered in ruling on a motion for summary judgment." <u>Countryside Oil Co., Inc. v. Travelers Ins. Co.</u>, 928 F.Supp. 474, 482 (D.N.J.1995). This rule applies with particular force to parties who attempt to rely upon hearsay statements to establish material issues of fact which would preclude summary judgment. With respect to such claims, it is well-settled that: "In this circuit, hearsay statements can be considered on a motion for summary judgment [only] if they are capable of admission at trial." <u>Shelton v. University of Medicine & Dentistry of N.J.</u>, 223 F.3d 220, 223, n.2 (3d Cir.

2000), citing <u>Stelwagon Mfg. v. Tarmac Roofing Sys., Inc.</u>, 63 F.3d 1267, 1275, n.17

(3d Cir. 1995).  In this regard it has been aptly observed that:

> It is clear that when considering a motion for summary judgement, a
> court may only consider evidence which is admissible at trial, and that a
> party can not rely on hearsay evidence when opposing a motion for
> summary judgment. <u>See</u> <u>Buttice v. G.D. Searle & Co.</u>, 938 F.Supp. 561
> (E.D.Mo.1996).   Additionally, a party must respond to a hearsay
> objection by demonstrating that the material would be admissible at trial
> under an exception to hearsay rule, or that the material is not hearsay.
> <u>See</u> <u>Burgess v. Allstate Ins. Co.</u>, 334 F.Supp.2d 1351 (N.D.Ga.2003).
> The mere possibility that a hearsay statement will be admissible at trial,
> does not permit its consideration at the summary judgment stage.  <u>Henry</u>
> <u>v. Colonial Baking Co. of Dothan</u>, 952 F.Supp. 744 (M.D.Ala.1996).

<u>Bouriez v. Carnegie Mellon Univ.</u>, No. 02-2104, 2005 WL 2106582,* 9 (W.D.Pa.

Aug. 26, 2005).  Thus, a party may not rely upon inadmissible hearsay assertions to

avoid summary judgment.  Therefore, where a party simply presents inadmissible

hearsay declarations in an attempt to establish a disputed material issue of fact, courts

have typically rebuffed these efforts and held instead that summary judgment is

appropriate.  <u>See, e.g.</u>, <u>Synthes v. Globus Medical, Inc.</u>, No. 04-1235, 2007 WL

2043184 (E.D.Pa. July 12, 2007); <u>Bouriez v. Carnegie Mellon Univ.</u>, No. 02-2104,

2005 WL 2106582,* 9 (W.D.Pa. Aug. 26, 2005); <u>Carpet Group Int'l v. Oriental Rug</u>

<u>Importers Assoc., Inc.</u>, 256 F.Supp.2d 249 (D.N.J. 2003).

Similarly, it is well-settled that: "[o]ne cannot create an issue of fact merely by

. . . denying averments . . . without producing any supporting evidence of the denials."

<u>Thimons v. PNC Bank, NA</u>, 254 F.App'x 896, 899 (3d Cir. 2007)(citation omitted).

Thus, "[w]hen a motion for summary judgment is made and supported . . ., an adverse party may not rest upon mere allegations or denial." Fireman's Ins. Co. Of Newark NJ v. DuFresne, 676 F.2d 965, 968 (3d Cir. 1982), see Sunshine Books, Ltd. v. Temple University, 697 F.2d 90, 96 (3d Cir. 1982)." [A] mere denial is insufficient to raise a disputed issue of fact, and an unsubstantiated doubt as to the veracity of the opposing affidavit is also not sufficient." Lockhart v. Hoenstine, 411 F.2d 455, 458 (3d Cir. 1969). Furthermore, "a party resisting a [Rule 56] motion cannot expect to rely merely upon bare assertions, conclusory allegations or suspicions." Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985)(citing Ness v. Marshall, 660 F.2d 517, 519 (3d Cir. 1981)).

Finally, a party who seeks to resist a summary judgment motion must also comply with Local Rule 56.1, which specifically directs a party opposing a motion for summary judgment to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted." L.R. 56.1. Under the Local Rules, the failure to follow these instructions  and appropriately challenge the material facts tendered by the defendant means that those facts must be deemed, since:

> A failure to file a counter-statement equates to an admission of all the facts set forth in the movant's statement. This Local Rule serves several purposes. First, it is designed to aid the Court in its determination of whether any genuine issue of material fact is in dispute. Second, it affixes the burden imposed by Federal Rule of Civil Procedure 56(e), as recognized in <u>Celotex Corp. v. Catrett</u>, on the nonmoving party 'to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, *designated specific facts showing that there is a genuine issue for trial*.' 477 U.S. 317, 324 (1986) (internal quotations omitted) (emphasis added).

<u>Doe v. Winter</u>, No. 04-CV-2170, 2007 U.S. Dist. LEXIS 25517, *2 n.2 (M.D. Pa. Apr. 5, 2007) (parallel citations omitted; court's emphasis). A party cannot evade these litigation responsibilities in this regard simply by citing the fact that he is a *pro se* litigant. These rules apply with equal force to all parties. See <u>Sanders v. Beard</u>, No. 09-CV-1384, 2010 U.S. Dist. LEXIS, *15 (M.D. Pa. July 20, 2010) (*pro se* parties "are not excused from complying with court orders and the local rules of court"); <u>Thomas v. Norris</u>, No. 02-CV-01854, 2006 U.S. Dist. LEXIS 64347, *11 (M.D. Pa. Sept. 8, 2006) (*pro se* parties must follow the Federal Rules of Civil Procedure).

Judged against these guideposts, the defendants are entitled to summary judgment in this case for at least five reasons, as set forth below.

## B.     <u>Buck's Claims Appear to be Unexhausted</u>

At the outset, we note that the defendants have asserted, without contradiction, that Buck has never fully exhausted his internal prison grievances with respect to any of the matters set forth in this complaint. This failure to exhaust his administrative

remedies as substantive significance for Buck since the Prison Litigation Reform Act,

42 U.S.C. § 1997 ("PLRA") requires that prisoners present their claims through an

administrative grievance process prior to seeking redress in federal court.

Specifically, the Act provides that:

> No action shall be brought with respect to prison conditions
> under [§ 1983], or any other federal law, by a prisoner
> confined in any jail, prison, or other correctional facility
> until such administrative remedies as are available are
> exhausted.

42 U.S.C. § 1997e(a).  In accordance with the PLRA, prisoners must comply with

exhaustion requirements with respect to any claim that arises in the prison setting,

regardless of the type of claim asserted, or the relief sought.  See Porter v. Nussle, 534

U.S. 516, 532 (2002) ("[T]he PLRA's exhaustion requirement applies to all inmate

suits about prison life, whether they involve general circumstances or particular

episodes, and whether they allege excessive force or some other wrong."); Booth v.

Churner, 532 U.S. 731, 741 n.6 (2001) ("[A]n inmate must exhaust irrespective of the

forms of relief sought and offered through administrative avenues.").

   As the statute's language makes clear, the exhaustion of available administrative

remedies prior to filing suit is mandatory.  See Nyhuis v. Reno, 204 F.3d 65, 73 (3d

Cir. 2000) ("[I]t is beyond the power of this court – or any other – to excuse

compliance with the exhaustion requirement, whether on the ground of futility,

inadequacy or any other basis.") (quoting Beeson v. Fishkill Corr. Facility, 28 F. Supp.

2d 884, 894-95 (S.D.N.Y. 1998)).  Whether an inmate has exhausted administrative remedies is a question of law that is to be determined by the court, even if that determination requires the resolution of disputed facts.  See Small v. Camden County, 728 F.3d 265 (3d Cir. 2013); see also Drippe v. Tobelinski, 604 F.3d 778, 781 (3d Cir. 2010).

Moreover, the exhaustion requirement of the PLRA is one of "proper exhaustion."  Woodford v. Ngo, 548 U.S. 81, 84 (2006).  Failure to comply with the procedural requirements of the available grievance system will result in a claim being deemed procedurally defaulted.  Id. at 90; Spruill v. Gillis, 372 F.3d 218, 227-32 (3d Cir. 2004).  An inmate cannot circumvent the PLRA's exhaustion requirement by failing to properly exhaust the prison's administrative review process, or by waiting until such remedies are no longer available to him.  Woodford, 548 U.S. at 95. However, if an inmate shows that the actions of prison officials directly caused the inmate's procedural default of a grievance, the inmate will not be held to strict compliance with the exhaustion requirement.  Brown v. Croak, 312 F.3d 109, 112-13. Likewise, "[w]here [the inmate] failed to receive even a response to the grievances addressing the . . . incidents, much less a decision as to those grievances, the [administrative remedy] process was unavailable to him."  Small v. Camden County, 728 F.3d 265, 271 (3d Cir. 2013).

Proper exhaustion of a grievance means that a prisoner must refrain both from acting too soon or waiting until it is too late to act. Thus, "[a]n 'untimely or otherwise procedurally defective administrative grievance or appeal' does not satisfy the mandatory exhaustion requirement of the PLRA. Woodford v. Ngo, 548 U.S. 81, 83, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006); see also Spruill v. Gillis, 372 F.3d 218, 230 (3d Cir.2004)." Barrick v. Prison Health Sys./Med., 335 F. App'x 153, 155 (3d Cir. 2009). Similarly, the procedural default component of the PLRA's proper exhaustion requirement does not permit "the filing of a suit before administrative exhaustion, however late, has been completed." Ahmed v. Dragovich, 297 F.3d 201, 209 (3d Cir. 2002) citing Perez v. Wis. Dep't of Corr., 182 F.3d 532, 534–35 (7th Cir.1999) (observing "Congress could have written a statute making exhaustion a precondition to judgment, but it did not. The actual statute makes exhaustion a precondition to suit"); Neal v. Goord, 267 F.3d 116, 122 (2d Cir.2001) (holding that a prisoner may not fulfill the PLRA's exhaustion requirement by exhausting administrative remedies after filing her complaint in federal court). Accord Jackson v. District of Columbia, 254 F.3d 262, 269 (D.C.Cir.2001); Freeman v. Francis, 196 F.3d 641, 645 (6th Cir.1999); Alexander v. Hawk, 159 F.3d 1321, 1328 (11th Cir.1998); Garrett v. Hawk, 127 F.3d 1263, 1265 (10th Cir.1997).

In this case, the uncontradicted evidence presented by the defendants indicates that Buck never fully grieved any of the matters set forth in his complaint. Thus, Buck's complaint presents the paradigm of an unexhausted grievance which should be dismissed for failure to comply with the PLRA. Accordingly, it is recommended that these claims should be dismissed for failure to exhaust these administrative remedies.

### C.    <u>Buck's Disciplinary Misconduct Complaints Fail as a Matter of Law</u>

Further, Buck's *pro se* complaint brings a series of claims against prison officials arising out of disciplinary actions which Buck experienced in prison. In particular, Buck complains that he was convicted of "false misconducts." The disciplinary records tendered by the defendants in support of their summary judgment motion reveal, however, that Buck was found guilty of misconduct after multiple staff witnesses described his role in an abusive, profane diatribe which targeted a prison nurse.

In our view, these claims fail for at least three reasons. First, as the defendants note, typically an inmate may not bring a civil rights action for damages related to an inmate disciplinary proceeding without first challenging and overturning, via the

appropriate proceedings, the disciplinary hearing in question. <u>Edwards v. Balisok</u>, 520 U.S. 641, 648 (1997).

Furthermore, these disciplinary claims fail as a matter of constitutional law since the requisites of due process in a prison disciplinary setting were fully met here. It is well established that "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." <u>Wolff v. McDonnell</u>, 418 U.S. 539, 556 (1974). The Supreme Court has, however, recognized a set of minimum procedural protections that must apply to prison disciplinary proceedings, including the right to: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety or correctional goals, to call witnesses and present documentary evidence as part of a defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action. <u>Id.</u> at 563-67.

Due process also requires that a prison disciplinary tribunal be sufficiently impartial. <u>Meyers v Alldredge</u>, 492 F.2d 296, 305-07 (3d Cir. 1974). The requirement of an impartial tribunal "prohibits only those officials who have a direct personal or otherwise substantial involvement, such as major participation in a judgmental or decision-making role, in the circumstances underlying the charge from sitting on the disciplinary committee." <u>Meyers</u>, 492 F.2d at 306. In the past, inmates have often

invited courts find violations of this due process right based upon general assertions of staff bias.  Yet, such requests, while frequently made, have rarely been embraced by the courts.  Instead, the courts have held that a "generalized critique" of staff impartiality is insufficient to demonstrate the degree of bias necessary to prove a due process violation.  Lasko v. Holt, 334 F. App'x 474 (3d Cir. 2009).  Furthermore, in the absence of a showing that the hearing officer was "personally or substantially involved in the circumstances underlying [the investigation of the] charge," Greer v. Hogston,  288 F.App'x. 797, 799 (3d Cir. 2008), courts generally decline to sustain due process challenges to disciplinary decisions on claims of staff bias.  See Redding v. Holt, 252 F.App'x 488 (3d Cir. 2007).

A prison disciplinary determination comports with due process if it is based on "some evidence."  See Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445, 454-56 (1985) ("[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board").  This standard is minimal and does not require examination of the entire record, an independent assessment of the credibility of witnesses, or even a weighing of the evidence.  See id. at 455; Thompson v. Owens, 889 F.2d 500, 501-02 (3d Cir. 1989).  Therefore, it is well settled that disciplinary decisions are entitled to considerable deference by a reviewing court and must be upheld whenever there is "some evidence" to support the

decision.   Hill, 472 U.S. at 457; Elkin v. Fauver, 969 F.2d 48 (3d Cir.1992);

Thompson v. Owens, 889 F.2d 500 (3d Cir. 1989); Franco v. Kelly, 854 F.2d 584, 588

(2d Cir. 1988); Freeman v. Rideout, 808 F.2d 949, 955 (2d Cir. 1986).   Thus, in this

setting the "function [of the court] is to determine whether there is some evidence

which supports the decision of the [hearing officer]." Freeman, 808 F.2d at 954.   As

the Supreme Court has observed, the "some evidence" standard is a highly deferential

standard of review and:

> Ascertaining whether this standard is satisfied does not require
> examination of the entire record, independent assessment of the
> credibility of witnesses, or weighing of the evidence.   Instead, the
> relevant question is whether there is any evidence in the record that could
> support the conclusion reached by the disciplinary board.

Hill, 472 U.S. at 455-456.

Provided that a prisoner is afforded these due process protections during the

disciplinary hearing process, it is well-settled that a claim that a misconduct report was

false, standing alone, does not state a valid cause of action.   As the United States Court

of Appeals for the Third Circuit has aptly observed:   "[F]iling false disciplinary

charges does not itself violate a prisoner's constitutional rights, so long as procedural

due process protections were provided.   See e.g., Freeman v. Rideout, 808 F.2d 949,

952-53 (2d Cir.1986) (the filing of false charges does not constitute a claim under §

1983 so long as the inmate was granted a hearing and an opportunity to rebut the

charges); Hanrahan v. Lane, 747 F.2d 1137, 1140 (7th Cir.1984)." Richardson v.

Sherrer, 344 F. App'x 755, 757-758 (3d Cir. 2007). See also Booth v. Pence, 141 F.

App'x 66 (3d Cir. 2005); Smith v. Mensinger, 293 F.3d 641, 653-54 (3d Cir. 2002).

These principles directly apply to inmate retaliation claims stemming from

prison disciplinary proceedings.  A prisoner claiming that prison officials have

retaliated against him for exercising his constitutional rights must prove the following

three elements:  (1) the conduct in which he engaged was constitutionally protected;

(2) he suffered adverse action at the hands of prison officials; and (3) his

constitutionally protected conduct was a substantial motivating factor in the

defendants' conduct.  Carter v. McGrady, 292 F.3d 152, 158 (3d Cir. 2002).  With

respect to the obligation to demonstrate that he suffered an adverse action, a plaintiff

must demonstrate that he suffered action that "was sufficient to deter a person of

ordinary firmness from exercising his rights." Allah v. Seiverling, 229 F.3d 220, 225

(3d Cir. 2000).  While filing false misconduct reports may constitute the type of action

that will, in certain cases, support a retaliation claim, Mitchell v. Horn, 318 F.3d 523,

530 (3d Cir. 2003), in a prison discipline context, an inmate's retaliation claim fails

whenever the defendant shows that there is "some evidence" to support the discipline

citation.  As the United States Court of Appeals for the Third Circuit has observed:

"[an inmate's] retaliatory discipline claim fails [when] there is 'some evidence'

supporting the guilty findings . . . . See Henderson v. Baird, 29 F.3d 464, 469 (8th Cir.1994) (stating that a finding of 'some evidence' to support a prison disciplinary determination 'checkmates' the prisoner's retaliation claim)." Nifas v. Beard, 374 F.App'x 241, 244  (3d Cir. 2010).

Judged against these standards, we find that Buck has failed to adequately support his complaints about this prison discipline, regardless of whether those claims are cast as  due process violations or retaliatory conduct by prison officials.  These disciplinary claims encounter what seems to be an insurmountable obstacle–the disciplinary hearing records reveal that Buck's misconduct was witnessed by multiple eyewitnesses.  This eyewitness testimony plainly constitutes some substantial evidence of Buck's guilt.  Since "filing false disciplinary charges does not itself violate a prisoner's constitutional rights, so long as procedural due process protections were provided," Richardson v. Sherrer, 344 F. App'x 755, 757-758 (3d Cir. 2007)(citations omitted), and  "[an inmate's] retaliatory discipline claim fails [when] there is 'some evidence' supporting the guilty findings . . . . See Henderson v. Baird, 29 F.3d 464, 469 (8th Cir.1994) (stating that a finding of 'some evidence' to support a prison disciplinary determination 'checkmates' the prisoner's retaliation claim)," Nifas v. Beard, 374 F.App'x 241, 244  (3d Cir. 2010), this significant evidence of Buck's guilt defeats these claims as a matter of law.

D.    **Buck's Medical Care Claims Are Unavailing**

Further, Buck's medical complaints are also unavailing. Liberally construed,

the gravamen of Buck's complaint is that prison officials violated his rights under the

Eighth Amendment to the United States Constitution by displaying "deliberate

indifference" to his medical needs. Buck faces an exacting burden in advancing this

Eighth Amendment claim against prison officials in their individual capacities. To

sustain such a claim, Buck must plead facts which:

> [M]eet two requirements: (1) "the deprivation alleged must be,
> objectively, sufficiently serious;" and (2) the "prison official must have
> a sufficiently culpable state of mind." Farmer v. Brennan, 511 U.S. 825,
> 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (quotation marks and
> citations omitted). In prison conditions cases, "that state of mind is one
> of 'deliberate indifference' to inmate health or safety." Id. "Deliberate
> indifference" is a subjective standard under Farmer-the prison official-
> defendant must actually have known or been aware of the excessive risk
> to inmate safety.

Beers-Capitol v. Whetzel, 256 F.3d 120, 125 (3d Cir. 2001).

By including a subjective intent component in this Eighth Amendment benchmark, the

courts have held that a mere generalized knowledge that prisons are dangerous places

does not give rise to an Eighth Amendment claim. See Jones v. Beard, 145 F. App'x

743 (3d Cir. 2005)(finding no Eighth Amendment violation where inmate-plaintiff

complained about cellmate who had a history of psychological problems, but where

plaintiff failed to articulate a specific threat of harm during the weeks prior to an

attack.)  In short, when "analyzing deliberate indifference, a court must determine whether the prison official 'acted or failed to act despite his knowledge of a substantial risk of serious harm.'  Farmer v. Brennan, 511 U.S. 825, 841 (1994).  A prisoner plaintiff must prove that the prison official 'knows of and disregards an excessive risk to inmate health or safety.'  Id. at 837."  Garvey v. Martinez, 08-2217, 2010 WL 569852, at *6 (M.D.Pa. Feb. 11, 2010).

These principles apply with particular force to Eighth Amendment claims premised upon inadequate medical care.  In the medical context, a constitutional violation under the Eighth Amendment occurs only when prison officials are deliberately indifferent to an inmate's serious medical needs.  Estelle v. Gamble, 429 U.S. 97, 105 (1976).  To establish a violation of his constitutional right to adequate medical care in accordance with this standard, a plaintiff is required to point to evidence that demonstrates (1) a serious medical need, and (2) acts or omissions by prison officials that indicate deliberate indifference to that need.  Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).

Deliberate indifference to a serious medical need involves the "unnecessary and wanton infliction of pain."  Estelle, 429 U.S. at 104.  Such indifference may be evidenced by an intentional refusal to provide care, delayed provision of medical treatment for non-medical reasons, denial of prescribed medical treatment, denial of

reasonable requests for treatment that results in suffering or risk of injury, <u>Durmer v. O'Carroll</u>, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury," <u>White v. Napoleon</u>, 897 F.2d 103, 109 (3d Cir. 1990).

However, it is also clear that the mere misdiagnosis of a condition or medical need, or negligent treatment provided for a condition, is not actionable as an Eighth Amendment claim because medical malpractice is not a constitutional violation. <u>Estelle</u>, 429 U.S. at 106. "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." <u>Durmer</u>, 991 F.2d at 67 (citations omitted). Furthermore, in a prison medical context, deliberate indifference is generally not found when some significant level of medical care has been offered to the inmate. <u>Clark v. Doe</u>, 2000 U.S. Dist. LEXIS 14999, 2000 WL 1522855, at *2 (E.D.Pa. Oct. 13, 2000)("courts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care").  Thus, such complaints fail as constitutional claims since "the exercise by a doctor of his professional judgment is never deliberate indifference.  <u>See e.g.</u> <u>Brown v. Borough of Chambersburg</u>, 903 F.2d 274, 278 (3d Cir.1990) ('[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights.')".  <u>Gindraw v. Dendler</u>, 967 F.Supp. 833, 836 (E.D. Pa. 1997).  Applying this exacting standard, courts have

frequently rejected Eighth Amendment claims that are based upon the level of professional care that an inmate received; see, e.g., Ham v. Greer, 269 F. App'x 149 (3d Cir. 2008); James v. Dep't of Corrections, 230 F. App'x 195 (3d. Cir. 2007); Gillespie v. Hogan, 182 F. App'x 103 (3d Cir. 2006); Bronson v. White, No. 05-2150, 2007 WL 3033865 (M.D. Pa. Oct. 15, 2007); Gindraw v. Dendler, 967 F.Supp. 833 (E.D. Pa. 1997), particularly where it can be shown that significant medical services were provided to the inmate but the prisoner is dissatisfied with the outcome of these services.   Instead, courts have defined the precise burden which an inmate must sustain in order to advance an Eighth Amendment claim against a healthcare professional premised on allegedly inadequate care, stating that:

> The district court [may] properly dis[miss an] Eighth Amendment claim, as it concerned [a care giver], because [the] allegations merely amounted to a disagreement over the proper course of his treatment and thus failed to allege a reckless disregard with respect to his . . . care.  The standard for cruel and unusual punishment under the Eighth Amendment, established by the Supreme Court in Estelle v. Gamble, 429 U.S. 97, 104 (1976), and its progeny, has two prongs:  1) deliberate indifference by prison officials and 2) serious medical needs.  "It is well-settled that claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute 'deliberate indifference.' "  "Nor does mere disagreement as to the proper medical treatment support a claim of an eighth amendment violation." . . . . [The inmate] alleged no undue delay in receiving treatment and, as the district court noted, the evidence he presented established that he received timely care . . . . Although [an inmate plaintiff] may have preferred a different course of treatment, [t]his preference alone cannot establish deliberate indifference as such second-guessing is not the province of the courts.

-21-

James, 230 F.App'x. at 197-198 (citations omitted).

In short, in the context of the Eighth Amendment, any attempt to second-guess the propriety or adequacy of a particular course of treatment is disavowed by courts since such determinations remain a question of sound professional judgment. Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (quoting Bowring v. Godwin, 551 F.2d 44, 48 (4th Cir. 1977)).  Furthermore, it is well-settled that an inmate's dissatisfaction with a course of medical treatment, standing alone, does not give rise to a viable Eighth Amendment claim.  See Taylor v. Norris, 36 Fed. Appx. 228, 229 (8th Cir. 2002); Abdul-Wadood v. Nathan, 91 F.3d 1023, 1024-35 (7th Cir.1996); Sherrer v. Stephen, 50 F.3d 496, 497 (8th Cir.1994).  Therefore, where a dispute in essence entails nothing more than a disagreement between an inmate and doctors over alternate treatment plans, the inmate's complaint will fail as a constitutional claim; see e.g., Gause v. Diguglielmo, 339 F.App'x 132 (3d Cir. 2009)(dispute over choice of medication does not rise to the level of an Eighth Amendment violation); Innis v. Wilson, 334 F.App'x 454 (3d Cir. 2009)(same); Rozzelle v. Rossi, 307 F.App'x 640 (3d Cir. 2008)(same); Whooten v. Bussanich, 248 F.App'x 324 (3d Cir. 2007)(same); Ascenzi v. Diaz, 247 F.App'x 390 (3d Cir. 2007)(same), since "the exercise by a doctor of his professional judgment is never

deliberate indifference." Gindraw v. Dendler, 967 F.Supp. 833, 836 (E.D. Pa. 1997)(citations omitted).

Here, the defendants have asserted, without contradiction, that Buck received on-going medical care during his confinement at the Canaan Penitentiary. While Buck may have been dissatisfied with aspects of that care, his subjective dissatisfaction does not rise to the level of a constitutional violation. Therefore, these Eighth Amendment medical claims should also be dismissed.

Further, at least one of Buck's medical complaints, the alleged denial of a knee brace in 2011, is now time-barred by the statute of limitations which is applicable to such civil rights complaints. It is well-settled that Bivens constitutional tort claims are subject to the state statute of limitations for personal injury actions. Wilson v. Garcia, 471 U.S. 261, 266-67 (1985). In Pennsylvania, the statute of limitations for a personal injury action is two years. 42 Pa.C.S. § 5524. A cause of action accrues for statute of limitations purposes when the plaintiff knows or has reason to know of the injury that constitutes the basis of the cause of action. Sameric Corp. of Delaware, Inc. v. City of Philadelphia, 142 F.3d 582, 599 (3d Cir. 1998); see also, Nelson v. County of Allegheny, 60 F.3d 1010 (3d Cir. 1995).

While this two-year limitations period may be extended based upon a continuing wrong theory, a plaintiff must make an exacting showing to avail himself of this

grounds for tolling the statute of limitations.  For example, it is well settled that the

"continuing conduct of [a] defendant will not stop the ticking of the limitations clock

[once] plaintiff obtained requisite information [to state a cause of action].   On

discovering an injury and its cause, a claimant must choose to sue or forego that

remedy." Barnes v. American Tobacco Co., 161 F.3d 127, 154 (3d Cir. 1998) (quoting

Kichline v. Consolidated Rail Corp., 800 F. 2d 356, 360 (3d Cir. 1986)).  See also

Lake v. Arnold,  232 F.3d 360, 266-68 (3d Cir. 2000).  Instead:

> The continuing violations doctrine is an "equitable exception to the
> timely filing requirement." West v. Philadelphia Elec. Co., 45 F.3d 744,
> 754 (3d Cir.1995).   Thus, "when a defendant's conduct is part of a
> continuing practice, an action is timely so long as the last act evidencing
> the continuing practice falls within the limitations period; in such an
> instance, the court will grant relief for the earlier related  acts that would
> otherwise be time barred." Brenner v. Local 514, United Bhd. of
> Carpenters and Joiners of Am., 927 F.2d 1283, 1295 (3d Cir.1991).   In
> order to benefit from the doctrine, a plaintiff must establish that the
> defendant's conduct is "more than the occurrence of isolated or sporadic
> acts." West, 45 F.3d at 755 (quotation omitted).  Regarding this inquiry,
> we have recognized that courts should consider at least three factors:  (1)
> subject matter-whether the violations constitute the same type of
> discrimination, tending to connect them in a continuing violation; (2)
> frequency-whether the acts are recurring or more in the nature of isolated
> incidents; and (3) degree of permanence-whether the act had a degree of
> permanence which should trigger the plaintiff's awareness of and duty to
> assert his/her rights and whether the consequences of the act would
> continue even in the absence of a continuing intent to discriminate.  See
> id. at 755 n. 9 (citing Berry v. Board of Supervisors of Louisiana State
> Univ., 715 F.2d 971, 981 (5th Cir.1983)).  The consideration of "degree
> of permanence" is the most important of the factors.  See Berry, 715 F.2d
> at 981.

Cowell v. Palmer Township. 263 F.3d 286, 292 (3d Cir. 2001).

In this case, Buck plainly attached great significance to this alleged infraction when it occurred in 2011. Therefore, when one assesses the "degree of permanence-whether the act had a degree of permanence which should trigger the plaintiff's awareness of and duty to assert his/her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate," Cowell v. Palmer Township. 263 F.3d 286, 292 (3d Cir. 2001), it is evident that this alleged incident had sufficient gravity to trigger Buck's duty to promptly file his claims when this incident allegedly occurred in 2011. Buck failed to do so, allowing 3 years to lapse, and that failure to act in a timely fashion now bars consideration of this particular claim.

### E.   Buck's Verbal Harassment Claims Fail

Furthermore, Buck claims that he was subjected to alleged verbal taunts by prison staff when he requested an additional portion of meatloaf, asserting that staff verbally and sexually harassed the plaintiff, thereby exposing him to cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution. This claim also warrants only brief consideration since: "It is well settled that verbal harassment of a prisoner, although deplorable, does not violate the Eighth

Amendment.  See McBride v. Deer, 240 F.3d 1287, 1291 n. 3 (10th Cir.2001); DeWalt v. Carter, 224 F.3d 607, 612 (7th Cir.2000); see also Boddie v. Schnieder, 105 F.3d 857, 861 (2d Cir.1997) (rejecting the Eighth Amendment claim of a prisoner who alleged that he "was verbally harassed, touched, and pressed against without his consent" because "[n]o single incident that he described was severe enough to be 'objectively, sufficiently serious.' ")." Robinson v. Taylor, 204 F. App'x 155, 156 (3d Cir.2006).  See, e.g., Thower v. Collins, No. 1:12-CV-1308, 2013 WL 654575, at *8 (M.D. Pa. Jan. 31, 2013) report and recommendation adopted, No. 1:CV-12-1308, 2013 WL 654551 (M.D. Pa. Feb. 21, 2013); Rister v. Lamas, 4:CV–10–1574, 2011 WL 2471486 (M.D.Pa. June 21, 2011); Patterson v. Bradford, CIV. 10–5043 NLH, 2011 WL 1983357 (D.N.J. May 20, 2011); Williams v. Bradford, CIV. 10–5120 JBS, 2011 WL 1871437 (D.N.J. May 13, 2011); Ringgold v. Lamby, 565 F.Supp.2d 549, 553 (D.Del.2008); Sharpe v. Costello, 1:06 CV 1493, 2007 WL 1098964 (M.D.Pa. Apr.11, 2007).  Because the plaintiff simply alleges that in one instance he was verbally harassed by staff, and given that it is "well settled that verbal harassment of a prisoner, although deplorable, does not violate the Eighth Amendment," Robinson v. Taylor, 204 F. App'x 155, 156 (3d Cir.2006), these verbal harassment allegations also fail to state a constitutional claim.

### F.     Buck is Not Entitled to Choose His Prison

Finally, we note that Buck's prayer for relief, which seeks a transfer to the prison of his choosing, a state facility in Wyoming, is legally inappropriate.  It is well established that the United States Constitution does not confer any right upon an inmate to any particular custody or security classification.  Moody v. Daggett, 429 U.S. 78, 88, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976); Montanye v. Haymes, 427 U.S. 236, 242, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976).  Thus, inmates do not have a liberty interest in retaining or receiving any particular security or custody status "[a]s long as the [challenged] conditions or degree of confinement is within the sentence imposed ... and is not otherwise violative of the Constitution." Id.  Similarly, it has long been recognized that prison transfer decisions, standing alone, do not constitute cruel and unusual punishment in violation of the Eighth Amendment to the Constitution.  See, e.g., Hassain v. Johnson, 790 F.2d 1420 (9th Cir.1986); Serrano v. Torres, 764 F.2d 47 (1st Cir.1985).  In short, even inmate transfers to facilities far from their homes do not rise to the level of cruel and unusual punishment; See, e.g., Gov't of Virgin Island v. Gereau, 592 F.2d 192 (3d Cir.1979) (transfer from Virgin Islands to mainland); Rodriguez–Sandoval v. United States, 409 F.2d 529 (1st Cir.1969) (transfer from Puerto Rico to Atlanta), and it is well-settled law establishes that prisoners have no inherent constitutional right to placement in any particular prison, to any security

classification, or to any particular housing assignment.  See Olim v. Wakinekona, 461

U.S. 238, 245, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983); Meachum v. Fano, 427 U.S.

215 225, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976); Montanye, 427 U.S. at 242; Bulger

v. U.S. Bureau of Prisons, 65 F.3d 48 (5th Cir.1995); Marchesani v. McCune, 531

F.2d 459 (10th Cir.), cert.denied, 429 U.S. 846, 97 S.Ct. 127, 50 L.Ed.2d 117 (1976).

Simply put, Buck may not choose his prison.  Therefore, his request that we

direct his placement in the prison of his choosing should be denied.

## III.   Recommendation

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the

defendants' motion for summary judgment  (Doc. 22.) be GRANTED.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings,
recommendations or report addressing a motion or matter described in 28
U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition
of a prisoner case or a habeas corpus petition within fourteen (14) days
after being served with a copy thereof.  Such party shall file with the
clerk of court, and serve on the magistrate judge and all parties, written
objections which shall specifically identify the portions of the proposed
findings, recommendations or report to which objection is made and the
basis for such objections.  The briefing requirements set forth in Local
Rule 72.2 shall apply.  A judge shall make a de novo determination of
those portions of the report or specified proposed findings or
recommendations to which objection is made and may accept, reject, or
modify, in whole or in part, the findings or recommendations made by the
magistrate judge.  The judge, however, need conduct a new hearing only
in his or her discretion or where required by law, and may consider the
record developed before the magistrate judge, making his or her own

determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 19th day of May 2015.

*S/Martin C.  Carlson*
Martin C. Carlson
United States Magistrate Judge